**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                          :    Chapter 7
                                                :
Debbie Gamiel Schachter                         :    Case No.:        05-35078
                                                :
                       Debtor.                  :
------------------------------------------------------------X
Shaun Considine,                                :
                                                :
                       Plaintiff,               :    Adv. Proc. No.:  05-9404
       -against-                                :
                                                :
Debbie Gamiel Schachter                         :
                                                :
                       Defendant.               :
                                                :
------------------------------------------------------------X

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S :**

Gregory Sheindlin, Esq.
Sheindlin & Sullivan, Esq.
350 Broadway, 10th floor
New York, New York 10013
*Attorneys for Plaintiff/Creditor, Shaun Considine*

Lewis D. Wrobel, Esq.
12 Raymond Avenue
Poughkeepsie, New York 12603
*Attorneys for Defendant/Debtor, Debbie Gamiel Schachter*

**CECELIA G. MORRIS
UNITED STATES BANKRUPTCY JUDGE**

In this adversary proceeding, plaintiff Shaun Considine ("Considine" or "Plaintiff")

objects to the dischargeability of an undetermined amount of money owed by the

Debtor, Debbie Gamiel Schachter ("Debtor" or "Defendant") pursuant to 11 U.S.C. § 523(a)(6), for "willful and malicious injury by the debtor to another entity or to the property of another entity." The debt arises as the result of a dog attack on September 8, 1998 (hereafter, the "Incident Date"). The parties have conducted discovery, and the Debtor now moves for summary judgment. As discussed below, material issues of fact exist that require a trial and compel denial of summary judgment.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. A determination as to the dischargeability of a debt is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I).

A bankruptcy court must have some authority to determine whether debts arising from personal injury torts constitute a willful and malicious injury for purposes of 11 U.S.C. § 523(a)(6) (*e.g.*, where the facts are undisputed), Section 157 of Title 28 U.S.C. repeatedly emphasizes that the bankruptcy courts have no power to make factual determinations regarding personal injury tort claims such as the debt at issue here. *See* 28 U.S.C. § 157(b)(2)(B) (core jurisdiction does not extend to "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11"); (b)(2)(O) (core jurisdiction extended to "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, *except personal injury tort or wrongful death claims*") (emphasis added); (b)(5) ("The district court shall order that personal injury tort and wrongful death claims shall be tried

in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending"). *See also In re Erickson*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) (although bankruptcy court lacks subject matter jurisdiction to adjudicate personal injury tort claim, it has exclusive jurisdiction to adjudicate dischargeability once the claim has been liquidated).

## **Background**

On or about September 4, 2001, the Plaintiff commenced an action in New York State Supreme Court, New York County, against the Debtor and other parties seeking, among other things, compensation for the injuries received as a result of an attack by the dogs owned by the Debtor (ECF Docket No. 33, Exh. 1; the "State Court Action"). The State Court Action demands damages of $10 million against the defendants, including the Debtor, on several counts of action, including a count of action against the Debtor for "illegal, criminal, intentional, wanton, gross, malicious and willful … failure to properly leash, control, supervise, handle, train and maintain" her dogs. State Court Action, ¶95-96. Summary judgment was granted against the Debtor as to liability in the State Court Action.[1] A trial was scheduled in the State Court Action for January 19, 2005 to determine the assessment of damages owed by Debtor to Plaintiff.

On January 12, 2005, approximately seven days prior to the commencement of the trial in the State Court Action, the Debtor filed for protection under Chapter 7 of the Bankruptcy Code. Along with the voluntary petition, the Debtor filed a Schedule of

---

[1] It appears that the Debtor's liability was based in part on her failure to appear and her prior guilty plea to reckless assault which was held to be "decisive in this action for negligently and/or recklessly causing plaintiff's injury." *See* April 21, 2003 Decision and Order of Justice Shirley Werner Kornreich (ECF Docket No. 33, Exh. 2), p. 3-4.

Assets and Liabilities and Statement of Financial Affairs. Plaintiff was listed as a creditor in Schedule F. The Debtor's bankruptcy petition indicates, and the Chapter 7 Trustee certified in August 2005, that this will be a "no asset" case, meaning that creditors such as this Plaintiff will receive nothing unless the debt is declared non-dischargeable. This bankruptcy filing stayed all proceedings in the State Court Action, and no party has moved this Court for relief from the automatic stay with regard to the State Court Action. *See* 11 U.S.C. § 362(a); *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (setting forth test for determining whether "cause" exists under Section 362(d)(1) to lift the automatic stay to permit the litigation to proceed in another forum).

Plaintiff commenced an adversary proceeding in this Court on April 22, 2005. (ECF Docket No. 1; hereafter, the "Complaint"). The Debtor answered the Complaint on August 25, 2005 (ECF Docket No. 8; hereafter, "Answer").[2] On May 16, 2007, Defendant moved for summary judgment (ECF Docket No. 30, 31); Plaintiff opposed the motion (ECF Docket No. 33, 35), and the parties submitted a joint statement of undisputed facts (ECF Docket No. 34; hereafter, the "Joint Statement"), with exhibits thereto (ECF Docket No. 38).

The parties agree that the following facts are undisputed:

- In 1997 and 1998, the Debtor and her husband, Norman Schachter, purchased three dogs from Baden Working Service Centre. The dog named "Soldat" was purchased in or around February 14, 1997. The dog named "Red" was purchased in or around January 1998. The dog named "Doosa" was purchased in or around August 1998. Joint Statement, ¶5. Doosa was a Dutch Malinois breed. Red was a German Shepherd breed.

---

[2] The adversary proceeding originally sought denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a); those causes of action were withdrawn or dismissed by order dated August 16, 2005. The Debtor received an order of discharge on August 24, 2005. At about the same time, the parties agreed that the subsequent acts of the Debtor's husband, Norman Shachter, were irrelevant to the issue of whether the Debtor's acts at the time of the dog attack were willful and malicious. *See* Complaint, ¶22(6)-(7).

- The dog Soldat was a mixed breed of Dutch and German Shepherds. Joint Statement, ¶6.

- Soldat was trained to perceive a threat to his owner. Joint Statement, ¶8.

- On the Incident Date, the Debtor brought the three dogs to the Great Lawn section of Central Park in Manhattan. Joint Statement, ¶9.

- Prior to the Incident Date, Plaintiff and Defendant, to the best of their knowledge, had never met and did not know each other. Joint Statement, ¶1.

- On the Incident Date, the Debtor knew that dogs, including her three dogs, were required by law to be kept on a leash when present on the Great Lawn in Central Park. Joint Statement, ¶10. As discussed below, the parties do not agree on whether or not the dogs were leashed.

- The incident occurred at about 7:45 p.m. on the Incident Date on the Great Lawn in Central Park. During the course of the incident, the Plaintiff received numerous bites from at least one of the Debtor's dogs. Joint Statement, ¶11-12.

- The parties agree that the Debtor did not say anything when one of her dogs ran towards the Plaintiff and attacked him. *See* May 21, 2007 Affidavit of Shaun Considine (ECF Docket No. 33; hereafter "<u>Plaintiff Aff.</u>"), ¶13 ("[Debtor] did not say anything when the dogs ran toward and attacked me"); Debtor's May 15, 2007 Affidavit (ECF Docket No. 30; hereafter "<u>Debtor Aff.</u>"), ¶13 ("At no time … did I urge or direct my dogs to attack [Plaintiff]"); Transcript of Debtor's deposition (ECF Docket No. 33, Ex. 3; hereafter, "<u>Debtor Deposition</u>"), p. 79-80, 82; Joint Statement, Exh. J, p. 6, ¶1.

- Though many other circumstances leading up to the dog attack are in dispute, the parties agree the Debtor instructed or attempted to instruct her dog to stop attacking the Plaintiff after the attack had begun. Plaintiff Aff., ¶16 (heard Debtor yelling "Stop, Stop"); Debtor Aff., ¶8 ("I frantically tried to stop the fighting by pulling on Soldat's collar and leash and telling [Plaintiff] to stop hitting my dog and he will stop biting."), ¶13. Debtor Deposition, p. 74-75.

- On the Incident Date, the Plaintiff received physical injuries and was hospitalized at Lenox Hill Hospital for treatment as a result of the dog bites. Joint Statement, ¶13.

- Also on the Incident Date, two summons were issued to the Debtor by a New York City police officer. One of the summons stated: "At T/P/O Deft was in possession of 3 large dogs in Central Park's Great Lawn oval signs are posted at all entrances stating, 'No Dogs on Lawn'." Joint Statement, ¶15.

- The Debtor was eventually arrested and arraigned on charges of violating Penal Law §120.05 (Criminal Assault in the Second Degree) and Penal

- 5 -

Law §120.20 (Reckless Endangerment in the Second Degree). Joint Statement, ¶18. On July 5, 2001 the Debtor entered a plea of guilty in the Supreme Court of the State of New York, County of New York to reckless assault. *See* Joint Statement, ¶22; ECF Docket No. 33, Exh. 2, p. 3.

**Disputed Facts**

The parties have raised the following issues of fact:

- The Plaintiff claims the dogs were not on leashes. Complaint, ¶22; Plaintiff Aff., ¶6 and 11. The Debtor contends that the dogs were leashed. Debtor Aff., ¶3, Debtor's Answer, ¶7; Debtor Deposition, p. 58, 69; Joint Statement, Exh. H, p. 8. It is not clear whether the Debtor let go of some or all of the dogs' leashes at some point during the incident. Debtor Deposition, p. 72-74.

- The Plaintiff claims all three dogs attacked him. Plaintiff Aff., ¶12-13. The Debtor denies this. Debtor Aff., ¶7 ("My other two dogs were barking and jumping but did not bite Mr. Considine."); Debtor Deposition, p. 74-75.

- The Plaintiff claims he was approximately 20 feet from the Debtor at the time of the attack, and the dogs ran up to him. Plaintiff Aff. ¶4, 10. The Debtor denies this and claims that the Plaintiff approached her, yelling and cursing. Debtor Aff., ¶5; Debtor Deposition, p. 81-82 (Debtor believed Plaintiff was less than four feet away).

- Debtor claims that on the Incident Date the Plaintiff approached her and her dogs. Debtor Aff. ¶4 (claiming Plaintiff approached her "yelling and cursing"), ¶5 (alleging the Plaintiff was "Yelling, waving his hands and shaking a rolled up newspaper"), ¶6-7 (after Soldat barked and jumped at him, Plaintiff allegedly "quickly returned yelling 'your damn dog just tore my shorts'," "started running back over to [Debtor]" and "came over close to me so that I could see the tear in his shorts, all the time yelling and acting in a threatening manner"); Debtor Deposition, p. 68, 70. The Plaintiff denies this. Plaintiff Aff., ¶3 ("I observed a dog run directly up to me and closely circle around me before returning to its owner"), ¶10 (after Soldat allegedly tore his shorts "I had not moved closer to [Debtor]").

- Plaintiff claims that on or about the Incident Date the Debtor stated, in substance, to a police detective that the three dogs were all attack dogs. The Debtor denies this. *Compare* Plaintiff's November 22, 2006 Notice to Admit to Defendant (ECF Docket No. 33, Ex. 5), ¶19 *with* Defendant's Response to Plaintiff's Notice to Admit (Joint Statement, ECF Docket No. 33, Ex. 6), ¶19.

- It is not clear whether the dogs were trained to obey anything other than "sit commands, basic obedience commands." *See* Debtor Deposition, p. 80; Plaintiff Aff., ¶5 (alleging that after he asked Debtor to put Soldat on a

- 6 -

- leash he saw Debtor bend down, pat Soldat and say "no"; "it appeared it [sic] she was reassuring the dog.").

- It is also not clear whether the Debtor withheld from issuing commands to her dogs to stand down because she believed the Plaintiff intended to harm her. Debtor Deposition, p. 18 (Debtor was instructed when she acquired dogs that if she stated "it's okay," the dogs would remain calm and under control), p. 69-72 ("I didn't know if he was a lunatic, someone had gotten murdered in Central Park the night before"; "I didn't know what he was going to do, I thought he was going to kill me, I had no idea").

## DISCUSSION

### I. Standards on Summary Judgment

Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Id.*, 477 U.S. at 322-23. When ruling upon cross-motions for summary judgment, the court must evaluate each motion separately and must draw all reasonable inferences against the party whose motion is under consideration. *See Coach, Inc. v. Peters*, 386 F. Supp.2d 495, 497 (S.D.N.Y. 2005).

### II. An "Omission" May Constitute A "Willful and Malicious Injury"

523(a) is a gallery of 19 types of debt that, in the judgment of Congress, should not be discharged. Although creditors, understandably, urge courts to construe the exceptions liberally to cover the debts owed to them, the Supreme Court has instructed

- 7 -

that "exceptions from discharge are to be strictly construed so as to give maximum effect to the policy of the bankruptcy code to provide debtors with a 'fresh start'." *Kawaauhau v. Geiger (In re Geiger)*, 113 F.3d 848, 853 (8th Cir. 1997), *aff'd*, 523 U.S. 57 (1998).

With regard to 11 U.S.C. § 523(a)(6), specifically:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover … the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply the act itself."

*Kawaauhau v. Geiger,* 523 U.S. 57, 61 (1998) (emphases in original) (quoting Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964). The injury caused by the debtor must also be malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d 84, 87 (2d Cir.1996) (citing Collier on Bankruptcy). Malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances" *Id.* at 88 (alteration in original, internal quotation marks omitted). "Maliciousness will be found where the 'debtor has breached a duty to the plaintiff founded in contract, statute or tort law, willfully in the sense of acting with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance to warrant the denial of discharge.'" *In re Hambley*, 329 B.R. 382, 402 (Bankr. E.D.N.Y. 2005) (quoting *In re Blankfort*, 217 B.R. 138, 144 (Bankr. S.D.N.Y. 1998)).

- 8 -

There is no requirement in the words of the statute that the "willful and malicious injury" be the result of an affirmative act. *See, e.g., In re Patch*, 356 B.R. 450, 457 (B.A.P. 8th Cir. 2006) (rejecting, in dicta, the argument that a passive failure, as opposed to overt conduct, cannot meet the standard for dischargeability under Section 523(a)(6)); *In re Boughter*, 297 B.R. 916, 921-922 (Bankr. S.D. Ga. 2003) (denying summary judgment where plaintiff could possibly show that debtor's "outright refusal to supply the name of his company's insurance company caused Plaintiff to lose a vested right to sue the insurance company" which could have constituted an "unbroken chain of events" that lead to plaintiff's injury). To be sure, under *Kawaauhau v. Geiger*, *supra*, an omission that is merely negligent or reckless would not satisfy the standard under Section 523(a)(6). But an omission, like an affirmative act, can be the result of intent, and a failure to act may be just as willful and malicious as any affirmative act, *under appropriate circumstances*. The circumstances in this case are the subject of numerous disputes that will require a trial.

### III.  Material Issues of Fact Exist

As discussed above, whether the Debtor could have issued a command that would have had the effect of restraining her dogs is unclear. An affirmative answer to this question would not necessarily compel the finding of a willful and malicious omission. The parties dispute even the most basic facts surrounding the altercation, including whether or not the Plaintiff approached or threatened the Debtor in any way. It is equally unclear whether the dogs were leashed and, if so, whether the Debtor ever released her hold on any of the leashes. The Plaintiff characterizes the facts – disputed and undisputed – as proof that the Debtor "permitted her three well-trained

- 9 -

attack dogs to commence an unjustified act of self-defense against [Plaintiff], presently 70 years old, because she unreasonably believed she was defending herself against a murderer or rapist." *See* Affirmation of Gregory Sheindlin (ECF Docket No. 33; hereafter, "Scheindlin Aff."), ¶3.  The Debtor has testified that the Plaintiff approached her, yelling and cursing.

Moreover, Plaintiff, through his counsel, emphasizes the importance of whether or not the dogs are "well-trained attack dogs," which the Plaintiff contends is synonymous with "working service dogs."

> The issue is relevant because it evidences [Debtor's] knowledge regarding the dogs' dangerous capabilities and, equally important, her option to control the dogs including her ability to permit or prevent the commencement of the dog attack and her ability to permit or prevent the continuation of the dog attack which lasted up to five minutes.

Scheindlin Aff., ¶5.

The Plaintiff also contends that the Debtor's belief that she was acting in self defense was unreasonable or irrational under the circumstances. Plaintiff's Memorandum of Law in Opposition to Summary Judgment, p. 4. *In re Taylor*, 322 B.R. 306, 309 (Bankr. N.D. Ohio 2004) recognized that while acts properly taken in self defense would provide a valid defense to a claim under Section 523(a)(6), "the claim of self-defense is an affirmative defense, thereby placing the burden on the Defendant to establish its elements."

> Also, from an evidentiary standpoint, it cannot be overlooked that by raising an affirmative defense, which in effect admits the truth of the underlying allegations, the Defendant has ostensibly admitted that he acted with malice, but that he has a legally exculpatory reasons [sic] for the action.

*Id.*

- 10 -

The circumstances surrounding the question of the Debtor's belief and intent during this time period are extremely fact-intensive. In the Court's view, assessing the credibility of the witnesses will be essential to a fair determination of the issues.

**Further Proceedings**

Because the debt is in the nature of a personal injury tort, the Court cannot try the matter. 28 U.S.C. § 157(b)(5) states:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Judge Bernstein has observed that, "[a]lthough § 157(b)(5) expressly directs the district court to transfer the venue of the personal injury litigation to one of two federal courts, the district court may also abstain in favor of a non-bankruptcy forum." *In re New York Med. Group*, 265 B.R. 408, 412 (Bankr. S.D.N.Y. 2001) (citations omitted). The bankruptcy court cannot exercise the authority granted to the district court under § 157(b)(5).

> Nevertheless, the bankruptcy court's decision to grant stay relief is akin to abstention under § 157(b)(5) since both leave the case to be tried in the appropriate non-bankruptcy court. The two powers are distinct, however, and can be reconciled. Thus, while the bankruptcy court has the power to grant relief from the automatic stay to permit the commencement or continuation of personal injury litigation in a state or federal court … its decision does not affect the debtor's right to move in the district court under § 157(b)(5) to transfer the litigation in accordance with that provision.

*Id.* (citations omitted); *see also In re Erickson*, 330 B.R. 346, 349 (Bankr. D. Conn. 2005) (concurring with Judge Bernstein's decision in *In re New York Med. Group*, that bankruptcy court could grant relief from stay, if otherwise appropriate, to allow a personal injury tort claim to be litigated in a state court).

- 11 -

## **Conclusion**

For the foregoing reasons, the Court will issue a separate order denying both parties' motions for summary judgment and setting a further pre-trial conference for September 11, 2007 at 11:30 a.m.  At that time, the Court will consider whether the matter is ready to be transferred to the District Court for the Southern District of New York for trial, unless the parties request relief from stay to try the matter in state court.

Dated: Poughkeepsie, New York
         August 1, 2007

                                          */s/   Cecelia G. Morris*
                                          HONORABLE CECELIA G. MORRIS
                                          UNITED STATES BANKRUPTCY JUDGE